ADOPTION OF SERENA.[1]

No. 05-P-199.

Norfolk. June 9, 2005. - August 15, 2005.

Present: COWIN, SMITH, & GREEN, JJ.

*Adoption. Evidence,* Privileged communication, Communication between patient and psychotherapist. *Privileged Communication. Waiver.*

In a proceeding to terminate a mother's right to consent to the adoption of her daughter, the judge properly allowed a clinical psychologist to testify about communications made by the mother during an evaluation conducted by the psychologist, where the record demonstrated that the psychologist adequately informed the mother that the communications would not be privileged, under the exception established by G. L. c. 233, § 20B(*e*) [262-263], and that the mother knowingly and intelligently waived the privilege [263-264].

PETITION filed in the Norfolk County Division of the Juvenile Court Department on March 24, 2000.

The case was heard by *Joseph F. Johnston,* J.

*Henry C. Porter* for the mother.

*Christine A. Baily,* Assistant Attorney General, for Department of Social Services.

*Deborah Sirotkin Butler* for the child.

GREEN, J. On appeal from a decree terminating her parental rights to consent to the adoption of her daughter, the mother's principal argument is that the judge erred in allowing a clinical psychologist to testify about communications by the mother during a psychological evaluation conducted by the psychologist, because the communication was privileged under G. L. c. 233, § 20B, and the psychologist did not adequately inform the mother that the communications would not be privileged, under the exception established under § 20B(*e*), as amended by St.

[1] A pseudonym.

1986, c. 594.[2] See *Commonwealth* v. *Lamb*, 365 Mass. 265, 270 (1974). We conclude that the *"Lamb* warning" was adequate and that the mother knowingly and intelligently waived the statutory privilege. See *ibid.*

Before the psychologist testified at trial, the judge conducted a voir dire, during which both the psychologist and the mother testified, to explore the mother's challenge to the adequacy of the warning and the validity of the mother's waiver. The psychologist testified that she advised the mother before beginning the first evaluation session "that whatever we talked about in the session was not something that was private and confidential but that it would be in the report and it could be used by the [Department of Social Services (department)] and possibly used by the courts for making their decisions." She further testified that the mother "indicated that she understood and she agreed to take the evaluation under those circumstances." The psychologist also testified that the mother understood the *Lamb* warnings and showed no confusion or other indicia that she lacked the cognitive capacity to make a knowing waiver. The evaluation continued to a second session, and the psychologist repeated the warning at the beginning of the second session, albeit in less detail.[3] The psychologist further testified that the mother signed a written consent form, though the signed consent was not offered or admitted in evidence.

The mother acknowledged in her testimony that she understood that her communications with the psychologist were not confidential, that they would be conveyed to the department, and that the judge might eventually use the report to make a decision. However, the mother asserted that the psychologist

---

[2]At oral argument, the mother waived her claim that the trial judge failed to give proper consideration to recent positive gains allegedly made by the mother. The mother's remaining argument, that the judge's findings are clearly erroneous and unsupported by the record, is without merit; the record amply supports the judge's subsidiary findings, as well as his ultimate finding that she is unfit. The father, whose parental rights were also terminated by the decree, did not appeal.

[3]According to the psychologist, she "reminded [the mother] that this was not something that was private and confidential and that it would go in the report and, again, go to [the department]."

did not specifically tell her, and that she consequently did not understand, that the report would be used at trial.

At the conclusion of the voir dire, and in his findings of fact entered after the trial concluded, the trial judge found that the mother made a knowing and intelligent waiver of the privilege otherwise attaching to her communications with the psychologist and that she understood the *Lamb* warnings as given by the psychologist.

The mother's argument on appeal appears to take three discrete but related forms. First, she contends that the scope of the warning was inadequately detailed to come within the statutory exception to the privilege because it did not specifically discuss potential testimony by the psychologist, or use of the psychologist's report, "at trial." Second, she argues that the lack of specificity in the warning impaired the mother's comprehension of the implications of her waiver so that the waiver was neither knowing nor intelligent. Third, she argues that, by virtue of the very impairment that the psychologist evaluated, the mother lacked the mental capacity to make a knowing and intelligent waiver.

The relevant exception to the psychotherapist-patient privilege appears in G. L. c. 233, § 20B(*e*): "In any case involving child custody, adoption or the dispensing with consent to adoption in which, upon a hearing in chambers, the judge, in the exercise of his discretion, determines that the psychotherapist has evidence bearing significantly on the patient's ability to provide suitable care or custody, and that it is more important to the welfare of the child that the communication be disclosed than that the relationship between patient and psychotherapist be protected; however, that in such cases of adoption or the dispensing with the need for consent to adoption, a judge shall determine that the patient has been informed that such communication would not be privileged."[4]

The statutory exception by its terms prescribes no particular form that the warning must take, other than to inform the patient that the communications will not be privileged. Here, because

---

· [4]The statute defines "psychotherapist" to include a licensed psychologist.

the warning included advice that the report could be used by the courts in making their decisions and because the mother acknowledged that she understood that the judge might eventually use the report to make a decision, we decline to place particular significance on the fact that the warning did not refer by its terms specifically to use of the report "at trial." Compare *Adoption of Carla*, 416 Mass. 510, 515 n.5 (1993). We accordingly turn to the mother's assertions concerning her alleged lack of comprehension and capacity.

In assessing whether the waiver of a privilege is knowing and intelligent, we give substantial deference to the trial judge's determination of the validity of the waiver and will not reject the judge's subsidiary findings if they are warranted by the evidence. See *Commonwealth* v. *Hilton*, 443 Mass. 597, 605 (2005), and cases cited; *In the Matter of Laura L.*, 54 Mass. App. Ct. 853, 860 (2002). A waiver must be examined in the totality of the circumstances, but "[m]ental [limitations are] certainly a factor that a trial court should consider when deciding on the validity of a waiver." *Commonwealth* v. *Hilton, supra*, quoting from *Miller* v. *Dugger*, 838 F.2d 1530, 1539 (11th Cir.), cert. denied, 486 U.S. 1061 (1988). The question here is "whether the mother-patient was sufficiently informed as to the purpose and possible consequences of the [psychological] examination." *Petition of the Dept. of Social Servs. to Dispense with Consent to Adoption*, 396 Mass. 485, 488 (1986) (decided under G. L. c. 233, § 20B[b], before § 20B[e] was amended).

In the circumstances, we consider the judge's finding that the mother knowingly and voluntarily waived the statutory privilege otherwise covering her communications with the psychologist to be well supported by the record. The psychologist testified, and the mother acknowledged, that the mother understood that her communications during the evaluation could be used in court. Compare *Adoption of Carla*, 416 Mass. at 515 n.5. The judge was entitled to credit the psychologist's testimony that the mother had sufficient mental capacity to understand the nature of the rights she was waiving. Moreover, the judge heard detailed testimony from the psychologist concerning the mother's mental condition, and had the opportunity to observe

the mother during the course of her testimony (both during the voir dire and during the trial itself), and he was able thereby to assess directly her mental capacity.[5] Cf. *Commonwealth* v. *DeMinico*, 408 Mass. 230, 236 (1990). The psychologist was properly allowed to testify about the mother's communications made during the evaluation.

*Decree affirmed.*

---

[5]At the conclusion of the voir dire, while indicating that the psychologist would be allowed to testify regarding the mother's communications during the evaluation, the judge advised the parties that he would allow the mother to renew her objection if it appeared during the psychologist's substantive testimony that the mother's mental condition called the validity of her waiver into question.